**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| WEST BEND MUTUAL | ) |
| INSURANCE COMPANY | ) |
| | ) |
| | ) |
|       Plaintiff, | ) Case No.: 1:21-cv-1009 |
| | ) |
|   v. | ) |
| | ) |
| BEECH GROVE FIREARMS | ) |
| PROPERTIES, LLC, and the INDIANA | ) |
| DEPARTMENT OF ENVIRONMENTAL | ) |
| MANAGEMENT ("IDEM"), | ) |
| | |
|       Defendants. | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES Plaintiff, West Bend Mutual Insurance Company, by counsel, pursuant to the Declaratory Judgment Act and Rule 57 of the Federal Rules of Civil Procedure, and for its Complaint for Declaratory Judgment against Defendants, Beech Grove Firearms Properties, LLC and IDEM states as follows:

**I.**       **NATURE OF ACTION**

1.  This is an action for declaratory judgment pursuant the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02 and Rule 57 of the Federal Rules of Civil Procedure, for the purposes of determining an actual controversy between the parties involving insurance coverage.

**II.**       **THE PARTIES**

2.  Plaintiff, West Bend Mutual Insurance Company ("West Bend"), is a mutual insurance company formed in Wisconsin with its nerve center in West Bend, Wisconsin.  At all

1

times material, it was authorized to transact the business of insurance within the state of Indiana. West Bend is a citizen of the State of Wisconsin.

3.      Defendant Beech Grove Firearms Properties, LLC ("Beech Grove"), at all times relevant hereto, is and was an Indiana Limited Liability Company with its principal place of business located in Beech Grove, Marion County, Indiana. Beech Grove's sole member is Janet Burge, who is a resident and citizen of the State of Indiana.

4.      Defendant, the Indiana Department of Environmental Management ("IDEM"), is a department of the State of Indiana, existing under the laws of the state, and therefore is a citizen of the State of Indiana.

### III.      JURISDICTION AND VENUE

5.      This Court has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as this is a civil action in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

6.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2), as Defendants have their principal places of business within the district, and the property in question is situated within the district. Venue is also proper pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, because an actual controversy exists between the parties and within the jurisdiction of this Court.

### IV.      FACTUAL ALLEGATIONS

**A. The Claim**

7.      Beech Grove purchased property located at 3020 South Emerson Ave., Beech Grove, Indiana 46107 (the "Property") in November 2011.

8.      Prior to purchasing the Property, the Small Business Administration required Beech Grove to perform an environmental site assessment ("ESA") of the Property.

9.      To meet the obligations of the Small Business Administration, Beech Grove hired Environmental Services Associates, LLC ("Environmental Services") to perform the ESA.

10.     In a report dated May 28, 2010 (the "Phase I Report"), Environmental Services stated that the purpose of the ESA was to identify the presence or likely presence of any hazardous substances or petroleum products associated with the Property. Attached hereto as Exhibit A (excluding appendices) is a copy of the Phase I Report.

11.     The Phase I Report sets forth multiple "Recognized Environmental Conditions" which required further investigation. According to the Phase I Report, a "Recognized Environmental Condition" or "REC" is defined as "the presence of likely presence of any hazardous substances […]."

12.     Thereafter, Environmental Services performed groundwater sampling at the Property and, in a report dated December 3, 2010, reported its findings to Beech Grove (the "Phase II Report"). Attached hereto as Exhibit B is a copy of the Phase II Report.

13.     According to the Phase II Report, the analysis of the groundwater samples was outsourced to ENVision Laboratories who provided analytical reports for the groundwater samples received from the Property and reported concentrations of 1, 1, 1 – Trichloroethane, Trichloroethene and 1, 1-Dichloroethane above reporting limits.

14.     On or about March 17, 2020, IDEM sent a Request for Information (the "ROI") to Beech Grove regarding its investigation of possible groundwater contamination at or around the Property. Attached hereto as Exhibit C is a copy of the March 17, 2020 ROI from IDEM.

15.     In response to the ROI, Beech Grove produced numerous documents, including but not limited to the Phase I and Phase II Reports.

16.     On or about November 4, 2020, IDEM sent a Notice (the "Notice") to Beech Grove asserting contamination of groundwater at the Property owned by Beech Grove as evidenced by the Phase II Report produced by Beech Grove in Response to the ROI. A copy of the Notice is attached hereto as Exhibit D.

17.     According to the Notice, the Phase II Report indicated that, sometime prior to December 3, 2010, groundwater sampling was performed at the Property which contained concentrations of trichloroethene (TCE), and 1, 1-dichloroethane exceeding groundwater screening levels.

18.     Based on the foregoing, the Notice demands additional sampling at the Property to determine the nature and extent of the groundwater contamination and to determine if preferential pathways were affected.

19.     The Notice also makes a demand for soil sampling.

20.     According to the Notice, if Beech Grove refuses to comply, IDEM will take various actions against it, including but not limited to the following:

   a.   Seek a Commissioner's Order pursuant to Ind. Code §§ 13-25-4-9, and/or 13-14-2, compelling Beech Grove to undertake appropriate response actions;

   b.   Perform investigation(s) pursuant to Ind. Code § 13-25-4-6 to determine the extent of contamination and implement actions necessary to remediate the Property pursuant to Ind. Code § 13-25-4-9(a). Beech Grove would be required to reimburse IDEM for all response costs incurred by IDEM, pursuant to Ind. Code §§ 13-25-4-8 and 13-25-4-10; and

   c.   Refer the Property to the U.S. EPA for performance of an emergency response action and possible listing as a Superfund site on the National Priorities List, pursuant to CERCLA § 105, 42 U.S.C. 9605.

21.     In addition to the foregoing, the Notice demands reimbursement of IDEM's costs incurred in the oversight and administration of necessary response actions and advises Beech Grove that it will incur additional costs associated with site specific review of environmental investigation, remediation, and closure documentation, including site visits, data collection, meetings, technical review and legal review.

22.     On or about November 5, 2020, Beech Grove tendered the Notice to West Bend for coverage (the "Claim"). A true and correct copy of the November 5, 2020 Claim is attached hereto as Exhibit E.

**B. The West Bend Policies.**

23.     In November 2011, Beech Grove purchased its initial policy from West Bend with an effective date of November 30, 2011.

24.     Thereafter, West Bend issued seven policies of insurance to Beech Grove as its Named Insured from November 30, 2011 to November 30, 2016, pursuant to the following policies of insurance:

     a.  November 30, 2011 to November 30, 2012 (General Liability NSE1713666 00);
     b.  November 30, 2012 to November 30, 2013 (General Liability NSE1713666 01);
     c.  November 30, 2013 to November 30, 2014 (General Liability NSE1713666 02);
     d.  November 30, 2014 to November 20, 2015 (General Liability NSE1713666 03);
     e.  November 30, 2013 to November 30, 2014 (Umbrella NUE2060736 00);
     f.  November 30, 2014 to November 30, 2015 (Umbrella NUE2060736 01);
     g.  November 30, 2015 to November 30, 2016 (combined General Liability and Umbrella #1713666 04).

The relevant language of each policy is identical and, therefore, each of the foregoing policies will be referred to herein as the "Policies". True and correct copies of the foregoing policies are attached hereto collectively as group Exhibit F and are fully incorporated herein.

25.     The Commercial General Liability Coverage Form of the Policies provides in

relevant part:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**\*\*\***

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILTY**

**1.     Insuring Agreement**

    **a.**    *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:*

        **(1)**    *The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and*

        **(2)**    *Our right and duty to defend ends when we have used the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.*

    *No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.*

    **b.**    *This insurance applies to "bodily injury" and "property damage" only if:*

        **(1)**    *The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";*

        **(2)**    *The "bodily injury" or "property damage" occurred during the policy period; and*

        **(3)**    *Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property*

*damage" during or after the policy period will be deemed to have been known prior to the policy period.*

**c.** *"Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.*

**d.** *"Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any injured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:*

   **(1)** *Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;*

   **(2)** *Receives a written or verbal demand or claim for damages because of the "bodily injury"; or*

   **(3)** *Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.*

**e.** *Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".*

26.  The Commercial Liability Umbrella Coverage Form provides as follows:

### *COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM*

### *SECTION I – COVERAGES*

### *COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY*

**1.**  *Insuring Agreement*

**a.** *We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide  coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily  injury" or "property damage" to which this insurance does not apply. At   our discretion, we may investigate any "occurrence" that may*

involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. But:

**(1)**  The amount we will pay for the "ultimate net loss" is limited as described in Section **III** – Limits Of Insurance; and

**(2)**  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.**  This insurance applied to "bodily injury" and "property damage" only if:

**(1)**  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)**  The "bodily injury" or "property damage" occurred during the policy period; and

**(3)**  Prior to the policy period, no insured listed under Paragraph **1.a** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.**  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.**  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee"  authorized by you to give or receive notice of an "occurrence" or claim:

**(1)**  Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

> **(2)**   *Receives a written or verbal demand or claim for damages because of the "bodily injury"; or*
>
> **(3)**   *Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.*
>
> **e.**   *Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".*

27.    In response to the Claim, West Bend sent a letter dated January 14, 2021 wherein it acknowledged receipt of the Claim and agreed to provide Beech Grove with a defense against the Notice under a reservation of rights (the "ROR Letter"). A true and correct copy of the ROR Letter is attached hereto as Exhibit G.

28.    West Bend now seeks a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, to determine the rights and responsibilities of the parties with respect to the Policies relating to the Claim.

## <u>COUNT I – DECLARATORY RELIEF</u>
### (Known Claim)

29.    Plaintiff reincorporates by reference the allegations of Paragraphs 1 through 28, above, as if set forth here in full.

30.    An actual controversy exists as to the scope of the parties' rights and West Bend's obligations under the Policies.

31.    According to the Phase II Report, on or about December 3, 2010, Beech Grove had actual knowledge of the presence of hazardous substances in groundwater collected from the Property, including but not limited to Trichloroethene (TCE), 1, 1, 1 – Trichloroethane and 1, 1-Dichloroethane, in concentrations above applicable reporting limits.

32.     The Policies do not provide coverage for property damage where, prior to the policy period, an insured or its employee knew that the property damage had occurred, in whole or in part.

33.     The Policies do not provide coverage for the Claim because Beech Grove knew of the environmental contamination at the Property before it purchased its first policy of insurance with West Bend in November 2011.

34.     This action for declaratory judgment is necessary to determine all of the rights and responsibilities of the parties.

35.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, West Bend is entitled to declaratory relief establishing that, under the facts of the Claim and the applicable policy language, the Defendant, Beech Grove, is not entitled to coverage under the Policies and West Bend has no duty to provide a defense or indemnity to it for the Claim.

WHEREFORE, West Bend Mutual Insurance Company, by counsel, respectfully requests the Court grant the following:

a.   A declaration that Defendant Beech Grove is not entitled to coverage under the Policies for the Claim;

b.   A declaration that West Bend has no duty to provide a defense or indemnity to Beech Grove for the Claim;

c.   A declaration that the Policies do not provide coverage to Defendant Beech Grove for any current and future civil liability arising out of the Notice from IDEM dated November 5, 2020; and,

d.   For such other relief as the Court may deem proper.

## <u>COUNT II – DECLARATORY RELIEF</u>
### (Known Loss Doctrine)

36.     Plaintiff reincorporates by reference the allegations of Paragraphs 1 through 35, above, as if set forth here in full.

37.     An actual controversy exists as to the scope of the parties' rights and West Bend's obligations under the Policies.

38.     According to the Phase II Report, on or about December 3, 2010, Beech Grove had actual knowledge of the presence of hazardous substances in groundwater collected from the Property, including but not limited to Trichloroethene (TCE), 1, 1, 1 – Trichloroethane and 1, 1- Dichloroethane, in concentrations above applicable reporting limits.

39.     The Claim is barred by the common law doctrine of known loss (the "Known Loss Doctrine") because Beech Grove had actual knowledge of the environmental contamination at the Property and resulting liability therefrom before it obtained insurance for the Property from West Bend in November 2011.

40.     This action for declaratory judgment is necessary to determine all of the rights and responsibilities of the parties.

41.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, West Bend is entitled to declaratory relief establishing that, under the facts of the Claim and the applicable policy language, the Defendant, Beech Grove, is not entitled to coverage under the Policies and West Bend has no duty to provide a defense or indemnity to it for the Claim.

WHEREFORE, West Bend Mutual Insurance Company, by counsel, respectfully requests the Court grant the following:

    a.  A declaration that Defendant Beech Grove is not entitled to coverage under the Policies for the Claim;

    b.  A declaration that West Bend has no duty to provide a defense or indemnity to Beech Grove for the Claim;

    c.  A declaration that the Policies do not provide coverage to Defendant Beech Grove for any current and future civil liability arising out of the Notice from IDEM dated November 5, 2020; and,

d.   For such other relief as the Court may deem proper.

Respectfully submitted,

 /s/  Stephen C. Wheeler
STEPHEN C. WHEELER, #14991-34

FISHER MAAS HOWARD LLOYD & WHEELER, P.C.
9765 Randall Dr., Suite F
Carmel, Indiana 46280
(317) 578-1900
(317) 578-1330 fax
swheeler@fishermaas.com